286 P.3d 824

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Atmarama D. DIAZ, Petitioner/Defendant–Appellant.**

**No. SCWC–30324.**

Supreme Court of Hawai'i.

Oct. 18, 2012.

Eric A. Seitz, Ronald N.W. Kim, Della A. Bellati, and Sarah R. Devine, Honolulu, for petitioner.

Stephen K. Tsushima, Honolulu, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by ACOBA, J.

We hold that the District Court of the First Circuit (the court)[1] erred in denying the November 27, 2009 Second Motion to Set Aside Bail Forfeiture and For Return of Bail (Second Motion) filed by Petitioner/Defendant–Appellee Atmarama D. Diaz (Petitioner) because under the circumstances Petitioner's incarceration in California established good cause under Hawai'i Revised Statutes (HRS) § 804–51 (Supp. 2009) for his failure to appear at his August 9, 2004 arraignment, and thus for why the January 15, 2010 bail forfeiture judgment herein should not be executed.[2] We therefore vacate the May 30, 2012 judgment of the Intermediate Court of Appeals (ICA) filed pursuant to its April 30, 2012 Summary Disposition Order (SDO), affirming

the Order Denying In Part and Granting in Part Petitioner's November 27, 2009 Second Motion (Second Order) entered by the court on January 15, 2010. This case is remanded to the court for proceedings consistent with this opinion.

## I.

### A.

In 2004, Petitioner was on release in an unrelated criminal proceeding in the circuit court, *State v. Diaz*, Cr. No. 04–1–0711.[3] On June 15, 2004, the circuit court[4] amended the terms and conditions of Petitioner's pretrial release to allow him to travel to California in order to meet his obligations in a pending matter in that state's courts.[5]

On July 25, 2004, while traveling to California, Petitioner was arrested at Honolulu International Airport, for Promoting a Detrimental Drug in the Third Degree.[6] Petitioner's arrest led to the drug charge in the

---

1. The Honorable Gerald H. Kibe presided.

2. HRS § 804–51 (Supp.2009) provides as follows:

   Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof, *and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via personal service or certified mail, return receipt requested, to the surety or sureties on the bond,* of the entry of the judgment in favor of the State, *unless before the expiration of thirty days* from the date that notice is given to the surety or sureties on the bond of the entry of the judgment in favor of the State, *a motion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court.* If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, if the principal surrenders or is surrendered pursuant to section 804–14 or section 804–41, return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal or other event on the basis of which the court forfeited the bond or recognizance. If the motion or

   application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed unless the order overruling the motion or application is appealed from as in the case of a final judgment.

   (Emphases added.)

3. In response to Petitioner's request, we take judicial notice of *State v. Diaz*, Cr. No. 04–1–0711 pursuant to HRAP Rule 10(e). HRAP Rule 10(e)(2) allows, in part, a party to correct of modify the record on appeal "[i]f anything material to any party is omitted from the record by error or accident[.]" In that case, Petitioner was charged with two counts of Promoting a Dangerous Drug in the First Degree; one count of Promoting a Dangerous Drug in the Second Degree; one count of Unlawful Use of Drug Paraphernalia; and one count of Promoting a Dangerous Drug in the Third Degree.

4. The Honorable Richard K. Perkins presided.

5. In oral argument, Respondent/Plaintiff–Appellant State of Hawai'i (Respondent) indicated it did not object to this court taking judicial notice of the circuit court's Order Amending Terms of Defendant Diaz's Pre–Trial Release filed on June 15, 2004.

6. In Cr. No. 1P104–11530, Petitioner was charged with one count of Promoting a Detrimental Drug in the Third Degree in violation of HRS § 712–1249.

instant court proceedings, Cr. No. 1P104–11530. On the same day he was arrested, Petitioner posted $1,000 cash bail in the court and was released from custody. Later that day, Petitioner proceeded to California, where he was held in custody by California authorities.

Petitioner was scheduled to be arraigned in this case on August 9, 2004. However, Petitioner was not present on that date. The court[7] thus filed a notice of entry of bail forfeiture judgment and order (First Judgment),[8] forfeiting the $1,000 bail. Additionally, it issued a bench warrant for Petitioner's arrest. Petitioner was charged with Criminal Contempt of Court, HRS § 710–1077,[9] for his failure to appear at the August 9, 2004 arraignment, Cr. No. 1P105–18336. Bail on this charge was set at $150, which Petitioner subsequently posted.

On December 20, 2005, Petitioner's counsel (counsel) appeared in the court, waived Petitioner's presence, and entered pleas of not guilty on both charges. At the December 20, 2005 hearing and in Petitioner's Application, counsel maintained that Petitioner did not appear at the arraignment because Petitioner was in custody in California on August 9, 2004.[10] Counsel explained that Petitioner could not be present on December 20, 2005 because, although he was on parole in California, he was unable to make travel arrangements to return to Hawai'i.

Counsel then raised the issue of Petitioner's forfeited $1,000 bail. The court directed Counsel to "submit some kind of proof of that or do a motion[.]" Counsel then asked, "Just reinstate the bail?" and the court responded, "Yeah." Counsel stated, "We can do that" and the court answered, "Okay." Counsel filed the motion requested by the court on October 25, 2006, following the scheduled trial date of October 24, 2006.

### B.

On October 24, 2006, Petitioner appeared before the court for trial.[11] Respondent asked that Petitioner's trial be continued because three of Respondent's witnesses were absent. The court denied Respondent's request. Petitioner then orally moved to dismiss the charges and the court granted Petitioner's motion dismissing both charges with prejudice.

Costs of $50 associated with the contempt warrant was deducted from the $150 bail posted by Petitioner on October 6, 2005 for the contempt charge, and $100 was refunded to Petitioner. However, Petitioner was informed that the $1000 cash bail on the drug charge in Cr. No. 1P104–11530 had not been reinstated by the court and therefore could not be returned to Petitioner.

On October 25, 2006, Petitioner filed a Motion to Set Aside Bail Forfeiture and Refund Bail as to the $1,000 cash bail. (First Motion). Attached to the First Motion was the affidavit of Petitioner's counsel, declaring, *inter alia*, that Petitioner did not appear at the arraignment because Petitioner was incarcerated in California, he and Petitioner believed the $1,000 bail had been reinstated in the instant case, and there was no dispute as to why Petitioner failed to appear.[12]

---

7. The Honorable Clarence Pacarro presided.

8. The First Bail Forfeiture Judgment was a form "Notice of Entry and Judgment and/or Order." As noted by the ICA in the instant appeal, *see State v. Diaz*, No. 30324, 2012 WL 1525032, at *1 (App. Apr. 30, 2012) (SDO) (hereinafter, *"Diaz II"*), the First Judgment was not included in the record of Petitioner's first appeal. However, it was included in the record in the instant appeal.

9. HRS § 710–1077 (1993) states in relevant part that "[a] person commits the offense of criminal contempt if ... [t]he person knowingly disobeys or resists the process, injunction or other mandate of a court[.]"

10. Petitioner states in his Application that upon his release from custody in California, he re-

turned "immediately" to Hawai'i, but Petitioner did not provide dates of his release or return.

11. Trial had been set for January 23, 2006 but was subsequently continued to April 10, 2006. On April 27, 2006, Petitioner moved to dismiss the charge as a de minimis infraction. The hearing on Petitioner's motion to dismiss was continued several times until October 24, 2006. Petitioner's motion to dismiss as a de minimis infraction was heard and denied by the court on October 24, 2006.

12. In his declaration, Counsel declared in relevant part as follows:

(2) This case arises from [Petitioner's] arrest at the Honolulu International Airport on July

The court held a hearing on Petitioner's First Motion on November 21, 2006. At the end of the hearing, the court denied this motion. On March 16, 2007, the court filed its Findings of Fact and Conclusions of Law and Order Denying Petitioner's Motion to Set Aside Bail Forfeiture and Refund Bail (First Order). The court found, *inter alia,* that Petitioner was in custody in California at the time of the August 9, 2004 arraignment; subsequent to Petitioner's release, he appeared for trial and the court dismissed the drug charge because Respondent was not

prepared to proceed; following his trial, Petitioner learned that the $1,000 bail he posted had been forfeited; a day after the scheduled trial, Petitioner filed his First Motion; a hearing set on the motion for November 15, 2006 was continued so that the court could obtain clarification regarding the bail forfeiture policies and procedures of the "fiscal division" of the judiciary; at the rescheduled hearing on November 22, 2006, Respondent took "no position" on Petitioner's motion; and the court denied the motion at the end of the hearing.[13]

(Emphases added.)

25, 2004, when a single leaf of marijuana weighing .08 gram was discovered in his backpack as he passed through an inspection station.

(3) Following [Petitioner's] arrest herein he posted cash bail in the amount of $1,000.00 and was allowed to return to his home in California.

(4) I am informed that on or about January 13, 2005, a warrant was issued for [Petitioner's] arrest due to his failure to appear and for a hearing in case No. 1P104–11520, and the bail posted by [Petitioner] was declared forfeited.

. . .

(5) *I am informed that [Petitioner] failed to appear because at the time he was incarcerated in California in an unrelated matter.*

(6) Subsequently upon providing an explanation for his failure to appear and posting additional bail in the amount of $150.00 on a resulting contempt charge, *[Petitioner] was able to have the aforementioned arrest warrant set aside, and the matter was reinstated to the Court's calendar along with the new contempt charge.*

(7) *At that time both [Petitioner] and I understood and believed that once it had it had been established that his failure to appear was not deliberate, and the case was reinstated, that the bail also was reinstated pending a resolution of the underlying charges.*

. . .

(10) Following the hearing on October 24, 2006, when I accompanied [Petitioner] to [the court] cashier's window to retrieve his bail, we learned, for the first time, that the original bail had not been reinstated and therefore could not be returned to him, and we were advised to file a motion to address that problem.

(11) *I am informed and believe that there is no dispute or controversy as to why [Petitioner] failed to appear for his earlier court date, that he was not in contempt of court, and that there is not and never has been any factual or legal basis for the forfeiture of his bail.*

(12) I therefore request in the interests of justice that the bail forfeiture be set aside and vacated and that the bail in the amount of $1,000.00 be returned to [Petitioner].

13. The court entered the following relevant findings:

1. On or about July 25, 2004, [Petitioner] was arrested on a charge of Promoting a Detrimental Drug in the Third Degree (HRS § 712–1249).

2. Upon his arrest, [Petitioner] posted cash bail of $1,000.00 and was released from custody on July 25, 2004.

3. [Petitioner's] initial arraignment was set for August 9, 2004 in [the court].

4. [Petitioner] failed to appear at his August 9, 2004 arraignment whereupon [the court] ordered (a) forfeiture of [Petitioner's] bail of $1,000, and (b) issuance of a bench warrant for [Petitioner's] arrest with new bail set at $150.00.

5. A judgment of bail forfeiture . . . was filed on August 9, 2004.

6. *At the time of his August 9, 2004 arraignment, [Petitioner] was in custody in California on an unrelated criminal matter, but [Petitioner] was subsequently released from custody in California and eventually returned to Hawai'i.*

7. *Within thirty (30) days of [the court's] order of forfeiture of [Petitioner's] bail of $1,000.00, said funds were transferred from the Judiciary's fiscal account to the State of Hawaii general fund account.*

. . .

9. Upon execution of the bench warrant, [Petitioner] posted $150.00 bail and was released pending arraignment in [the court] on December 20, 2005.

. . .

11. *At the December 20, 2005 arraignment, [Petitioner's counsel] raised with [the court] the issue of [Petitioner's] bail of $1,000 forfeited on August 9, 2004.*

12. *[The court] directed [Petitioner's counsel] to file a written motion concerning any request by [Petitioner] to reinstate said forfeited bail.*

. . .

14. On October 24, 2006[,] [Petitioner] and [Petitioner's counsel] appeared for trial[.] . . .

. . .

The court concluded, *inter alia*, that Petitioner violated the general conditions of his release by failing to obtain permission to leave the jurisdiction, as required by HRS § 804–7.4;[14] Petitioner's First Motion filed on October 25, 2006 was untimely because Petitioner knew on December 20, 2005 that his bail was forfeited; and Petitioner's "mere claims" that he was incarcerated on August 9, 2004, without further explanation of the circumstances did not amount to "good cause" to set aside the First Judgment.[15]

## C.

On May 3, 2007, Petitioner filed a Motion for Extension of Time to File Notice of Appeal (Motion to Extend). In his Motion to Extend, Petitioner claimed that he did not receive a copy of the First Order until April 23, 2007. On May 10, 2007, the court granted Petitioner's Motion to Extend from April

---

16. [Respondent] then orally moved to continue [Petitioner's] trial as certain prosecution witnesses were not present. [The court] denied [Respondent's] motion to continue and granted [Petitioner's] oral motion to dismiss. The charge against [Petitioner] was accordingly dismissed with prejudice on October 24, 2006.

. . .

18. The $50 bench warrant cost was deducted from the $150.00 in bail posted by [Petitioner] on October 6, 2005, and the $100.00 balance of [Petitioner's] bail was refunded to [Petitioner] on October 24, 2006.

19. *On October 25, 2006, [Petitioner] filed the instant "Motion to Set Aside Bail Forfeiture and Refund Bail" ("Motion").*

. . .

21. [Petitioner's] Motion originally came on for [sic] hearing . . . on November 15, 2006[.]

. . .

22. *Following a brief discussion, the court continued the hearing on [Petitioner's] Motion to November 22, 2006 to obtain clarification regarding the policies and procedures of the fiscal division of the State Judiciary regarding bail forfeitures.*

. . .

24. *[Petitioner's counsel] argued the Motion on [Petitioner's] behalf, and [Respondent] took no position thereon.* Following argument, the court denied [Petitioner's] Motion.

(Emphases added.)

**14.** 14 HRS § 804–7.4 states as follows:

Any person released on bail . . . shall be released subject to the following conditions:

(1) The person shall not commit a federal, state or local offense during the period of release;

(2) The person shall appear for all court hearings unless notified by the person's attorney that the person's appearance is not required; and

(3) *The person shall remain in the State of Hawai'i unless approval is obtained by a court of competent jurisdiction to leave the jurisdiction of the court.*

(Emphasis added.)

**15.** The court entered the following relevant conclusions:

2. Bail is "conditioned for the appearance of the defendant at the session of a court." HRS § 804–1.

3. A defendant who has given bail must "appear promptly and respond thereto" and, upon failure to do so, default shall enter and be evidence of the breach of the defendant's appearance bond. HRS § 804–17.

4. The court was mandated on August 9, 2004 to enter default based on [Petitioner's] failure to appear.

5. The general conditions of release on bail are that the defendant: (1) shall not commit a federal, state, or local offense during his or her period of release; (2) shall appeal for all court hearing unless notified by the person's attorney that the person's appearance is not required; and

(3) *shall remain in the State of Hawaii unless approval is obtained from a court of competent jurisdiction to leave the jurisdiction of the court.* See HRS § 804–7.4.

6. *On August 9, 2004, [Petitioner] violated a general condition of bail by not appearing for his scheduled court proceeding (there is no showing that the court at any time gave [Petitioner] permission to leave the jurisdiction of the court).*

7. *Under HRS § 804–51, execution upon forfeited bail may be forestalled by written motion submitted to the court within thirty (30) days notice of a judgment of forfeiture-See State v. Camara*, 81 Hawai'i 324, 916 P.2d 1225 (1996).

8. *[Petitioner] having been aware as of at least December 20, 2005 of the forfeiture of [Petitioner's] $1,000 bail on August 9, 2004, the Motion is untimely.*

9. *The court has further considered the merits of [Petitioner's] motion and concluded that [Petitioner] has not met his burden of establishing good cause as to why the execution upon the judgment of bail forfeiture should not be allowed to stand.*

10. Defendant's mere claims that (1) he was incarcerated in the State of California on August 9, 2004, without further explanation of the circumstances pertaining thereto, and (2) the instant charge has now been dismissed do not, ipso facto, constitute sufficient good cause for granting [Petitioner's] motion.

(Emphases added.)

15, 2007 to June 8, 2007. On May 11, 2007, Petitioner filed a Notice of Appeal from the First Order.

The record in Petitioner's appeal of the First Order did not contain any documents dated before April 27, 2006. On October 13, 2009, the ICA dismissed Petitioner's appeal of the First Order for lack of appellate jurisdiction because, the record on appeal did not contain the First Judgment. In its order of dismissal, the ICA stated in part, that a bail forfeiture judgment was a prerequisite to a motion to set aside a bail forfeiture:

> [U]nder HRS Section 804–51, a motion to set aside a bail-forfeiture judgment is authorized only in situations where the trial court has entered a bail-forfeiture judgment. *Absent a bail-forfeiture judgment, HRS Section 804–51 (Supp.2008) does not authorize a motion to set aside a bail-forfeiture judgment.* Although the district court, in its FOF/COL/Order, refers to an August 9, 2004 district court judgment in the form of a "disposition slip" requiring the forfeiture of his bail, *the record on appeal does not contain any such judgment.*

*State v. Diaz,* 2009 WL 3290249, No. 28539, at *1 (App. Oct. 13, 2009) (*Diaz I* ) (emphases added).

## II.

### A.

On November 27, 2009, Petitioner filed his Second Motion. Attached to the Second Motion was the affidavit of Petitioner's counsel, referring to the findings and conclusions in the First Order.[16]

Respondent filed a memorandum in opposition to Petitioner's Second Motion, arguing (1) Petitioner had already filed a motion to set aside, (2) the First Motion was "exceptionally untimely," (3) the ICA had already ruled it lacked jurisdiction over the First Motion in the absence of a written bail forfeiture judgment; and (4) assuming further hearings were necessary, such hearings should be set before the court.

On January 4, 2010, the court[17] denied Petitioner's Second Motion, and granted Petitioner's request for entry of a bail forfeiture judgment. On January 15, 2010, the court

---

**16.** In his declaration, Counsel declared in relevant part as follows:

(1) I am the principal attorney for [Petitioner] in the above-entitled matter.

(2) *In its Findings of Fact and Conclusions of law filed herein on March 16, 2007* denying [Petitioner's] Motion to Set Aside Bail Forfeiture and Refund Bail filed on October 25, 2006, ... the Court, in relevant part, determined:

(a) A judgment of bail forfeiture in the form of a District Court disposition slip was filed on August 9, 2004 [Findings of Fact, at ¶ 5];

(b) *At the time of his August 9, 2004 arraignment, [Petitioner] was in custody in California on an unrelated criminal matter, but [Petitioner] was subsequently released from custody in California and eventually returned to Hawaii [Findings of Fact, at ¶ 6];*

(c) Within thirty (30) days of [the court's] order of forfeiture of [Petitioner's] bail of $1,000.00, said funds were transferred from the Judiciary's fiscal account to the State of Hawaii general fund account [Findings of Fact, at ¶ 7]

(d) After entering a plea of not guilty on December 20, 2005 [Petitioner] and [Petitioner's counsel] appeared for trial before the court] on October 24, 2006 at which time the charge against him was dismissed [Findings of Fact, at ¶¶ 10, 14, and 16];

(e) *Pursuant to the instruction of [the court] on October 25, 2006[,] [Petitioner] moved to set aside the bail forfeiture and refund his bail [Findings of Fact, at ¶ 11 and 19]*

(f) *[Petitioner's counsel] argued the motion to set aside the bail forfeiture and refund of bail on [Petitioner's] behalf, and [Respondent] took no position thereon* [Findings of Fact, at ¶ 24]

(3) On [Petitioner's] appeal from the denial of [First Motion] ... the [ICA] determined, in relevant part, that a "bail forfeiture judgment," which the court is required to enter before the forfeiture can be executed pursuant to [HRS] § 804–51, was never entered in this matter, and accordingly[,] [Petitioner's] appeal was dismissed for lack of an appealable order or judgment.

(4) *Without entry of a bail-forfeiture judgment, the execution of [the court's] order of forfeiture, i.e., "the transfer of said funds from the Judiciary's fiscal account to the State of Hawaii's general fund," was not authorized by law.*

(5) I am informed and believe *that there is no dispute or controversy as to why [Petitioner] failed to appear for his earlier court date,* that he was not in contempt of court, and that there is not and never has been any factual or legal basis for the forfeiture of his bail.

(Emphases added.)

**17.** The Honorable Gerald H. Kibe presided.

filed (1) a Second Order and (2) a Bail Forfeiture Judgment (Second Judgment). On February 1, 2010, Petitioner filed a Notice of Appeal from the First Order, the Second Order, and the Second Judgment.

## B.

On April 30, 2012, the ICA issued a SDO in which it determined that (1) it lacked jurisdiction over Petitioner's appeal from the First Order because Petitioner did not file the second appeal within thirty days of the entry of the First Order on March 16, 2007, *Diaz II*, 2012 WL 1525032, at *1; [18] (2) it had jurisdiction over Petitioner's appeal from the court's Second Order and Second Judgment, *id.* at 1–2; (3) the Second Motion was timely because, although Respondent contended Petitioner had general knowledge that the $1,000 bail had been forfeited in August 2004, nothing in the record established that he was served with a forfeiture judgment, and Petitioner timely appealed from the Second Judgment, *id.* at 2–3.

Additionally, the ICA held that the court did not abuse its discretion in holding Petitioner had not shown "good cause" for setting aside the Second Judgment because Petitioner "did not demonstrate how his absence from the State of Hawaiʻi was not a violation of the general conditions for release" which required Petitioner to " 'remain in the State of Hawaii unless approval is obtained from a court of competent jurisdiction to leave the jurisdiction of the court[,]' " *id.* at *4 (quoting HRS § 804-7.4(3)), and Petitioner "failed to provide any explanation for the circumstances of his incarceration in California that would support a good cause determination[,]" *id.* In light of the foregoing, the ICA affirmed the Second Order. *Id.*

## III.

In his application for writ of certiorari (Application), Petitioner presents the following questions:

**18.** The ICA thus dismissed Petitioner's appeal from the First Order for lack of appellate jurisdiction.

(1) Did the ICA gravely err in finding that the record did not demonstrate good cause to set aside [the second] bail forfeiture judgment?

(2) Did the ICA gravely err in finding that [Petitioner] failed to provide "any" explanation as to the circumstances of his incarceration in California supporting a good cause determination?

(3) Did the ICA gravely err in finding that [Petitioner] violated the general conditions of his release by being absent from the State of Hawaiʻi?

Respondent did not file a Response to Petitioner's Application.

## IV.

■ We note that "[a]lthough neither party raises a jurisdictional issue in this appeal, '[a]n appellate court has . . . an independent obligation to ensure jurisdiction over each case and to dismiss the appeal *sua sponte* if a jurisdictional defect exists." *In re Robert's Tours & Transp., Inc.*, 104 Hawaiʻi 98, 101, 85 P.3d 623, 626 (2004) (quoting *State v. Graybeard*, 93 Hawaiʻi 513, 516, 6 P.3d 385, 388 (App.2000)) (brackets and ellipsis in original). As the ICA stated, "with respect to the timeliness of [Petitioner's] appeal, 'HRAP Rule 4(a), as opposed to HRAP Rule 4(b), applies because forfeiture of a bail bond is a civil proceeding.'" *Diaz II*, 2012 WL 1525032, at *1 (quoting *Camara*, 81 Hawaiʻi at 329 n. 7, 916 P.2d at 1230 n. 7) (brackets omitted). HRAP Rule 4(a) provides that, "[w]hen a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.' "

■ Petitioner's notice of appeal in the instant appeal was filed on February 1, 2010. That notice of appeal was not filed within 30 days after the entry of the First Order filed on March 16, 2007. Thus, the ICA correctly determined that it did not have jurisdiction to consider Petitioner's appeal from the First Order. *Diaz II*, 2012 WL 1525032, at *1. The ICA was also correct that it did have

jurisdiction over the Second Order because Petitioner's February 1, 2010 notice of appeal was filed within 30 days of the filing of the Second Order and Second Judgment on January 15, 2010.

### V.

Although not an issue on certiorari, it should be noted that Respondent argued to the ICA that Petitioner's First Motion was untimely, and thus, the Second Motion was untimely as well under HRS § 804–51 [19] The court concluded that Petitioner's First Motion was untimely because Petitioner's counsel had notice at least as of December 20, 2005, that Petitioner's bail had been forfeited.

However, on certiorari, the timeliness of the First Motion is not at issue because the ICA concluded that the motion was not untimely and no party challenges that determination. The ICA stated that, because Petitioner was not a "surety[,]" it was not clear whether the specified methods of notice (personal service or certified mail, return receipt requested required) in HRS § 804–51 would apply to a defendant that posts his or her own bail. *Diaz II,* 2012 WL 1525032, at *3. However, the ICA concluded that, "at a minimum ... some type of notice of [ ] judgment was required, and that the defendant would then have thirty days to file a motion or application showing good cause why execution should not issue upon the judgment." *Id.* Because there is nothing in the record indicating that Petitioner was ever served with the First Judgment, we believe the ICA correctly concluded that the First Motion was not untimely. *Diaz II,* 2012 WL 1525032, at *2.

As set forth, *supra,* HRS § 804–51 states that, whenever bail is forfeited in a criminal case, "the court shall immediately enter judgment in favor of the State and against the principal or principals and surety or surety

19. As previously set forth, HRS § 804–51 provides in relevant part as follows:

Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and shall enter judgment in favor of the State, *unless before the expiration of thirty days from*

of the bond[.]" The court "shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via personal service or certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State[.]" HRS § 804–51. However, the judgment shall not be executed if, "before the expiration of thirty days from the date that *notice* is given to the surety or sureties[,]" "the *principal* or principals, surety or sureties, or any of them," files "a motion or application ... showing good cause why execution should not issue upon the judgment, is filed with the court." (Emphases added.)

HRS § 804–51, by its express language, provides that a principal, assumably including a defendant who posts his or her own cash bail, may file a motion or application to set aside a bail forfeiture judgment. Inasmuch as both a principal and a surety may apply to set aside a judgment for good cause, it would appear consistent with the intent of the statute that conditions similar to those imposed on sureties should apply to principals, who are afforded the same right to set aside the judgment. Given this premise for construing HRS § 804–51, a defendant would have "thirty days after notice has been given to the [defendant] that judgment has been entered in favor of the State[,]" to move or to apply to set aside a bail forfeiture judgment, as the ICA held.

▮ In the instant case, it is not evident that the type of notice for entry of judgment prescribed for sureties under HRS § 804–51 was given to Petitioner. However, unlike a surety, a defendant is a party to the underlying criminal case and would ordinarily have knowledge of the ongoing status of that case. Accordingly, notice of the entry of judgment for a principal need not meet the precise

*the date that notice is given to the surety or sureties on the bond of the entry of the judgment in favor of the State,* a motion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court.
(Emphasis added.)

requirements set forth in HRS § 804–51 for sureties.

■ We believe this is a reasonable construction of HRS § 804–51. "[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *State v. Haugen,* 104 Hawai'i 71, 85 P.3d 178 (2004) (emphasis, quotation marks, and citation omitted); *see also State v. Bayly,* 118 Hawai'i 1, 7–8, 185 P.3d 186, 192–93 (2008) ("It is a basic rule of statutory interpretation that 'provisions of a penal statute will be accorded a limited and reasonable interpretation . . . in order to preserve its overall purpose and to avoid absurd results" (quoting *State v. Bates,* 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997)) (brackets omitted)).

■ Also, the timeliness of the Second Motion is not at issue on the ground that it was filed before the expiration of thirty days from the date that notice was given of the entry of judgment of forfeiture, HRS 804–51. The Second Judgment was filed after Petitioner filed his Second Motion. The ICA concluded that the filing of the Second Motion before the entry of the Second Judgment did not render it untimely. *Id.* at *3. The thirty-day limit in HRS § 804–51 imposes an outer limit on the filing of a motion and does not require filing within 30 days after the judgment of forfeiture is filed. *See Diaz II,* 2012 WL 1525032, at *3 (citing *Saranillio v. Silva,* 78 Hawai'i 1, 7, 889 P.2d 685, 691 (1995) ("HRCP [Rule] 59(e) does not require that a motion be served after the entry of judgment; it imposes only an outer [ten day] time limit on the service of a motion to alter or amend the judgment[.]")). Therefore, Petitioner's Second Motion was timely filed under HRS § 804–51.

## VI.

■ This court has declared that "the primary purpose [ ] of bail in a criminal case is not to punish a defendant or surety, nor to increase the revenue of the State, but rather to honor the presumption of innocence," by allowing "a defendant to prepare his [or her] case, and to ensure the defendant's presence in the pending proceeding." *Camara,* 81 Hawai'i at 330, 916 P.2d at 1231 (1996) (quoting *State v. Seybert,* 231 Mont. 372, 753 P.2d 325, 326 (1988)). Accordingly, "forfeitures of bail bonds will generally be vacated . . . where it appears to the satisfaction of the court that uncontrollable circumstances prevented appearance pursuant to the stipulations in the bond, or that the default of the principal was excusable." *Camara,* 81 Hawai'i at 330, 916 P.2d at 1231.

■ Also, "[g]enerally, sufficient cause to set aside a forfeiture is a showing that the party did not break his or her recognizance intentionally, with the design of evading justice, or without a sufficient cause or reasonable excuse, such as unavoidable accident or inevitable necessity preventing his or her appearance." *Id.* at 330, 916 P.2d at 1231 (internal citation and brackets omitted). Under HRS § 804–51 "good cause why execution should not issue upon the judgment" of forfeiture "may be satisfied by the defendant, prior to the expiration of the thirty-day search period [by]: (1) providing a satisfactory reason for his or her failure to appear when required; or (2) surrendering or being surrendered." *Id.* at 330, 916 P.2d at 1231. *See also State v. Ranger Ins. Co.,* 83 Hawai'i 118, 123, 925 P.2d 288, 293 (1996).

## VII.

### A.

■ Petitioner maintains that his incarceration in California constituted an uncontrollable circumstance or was excusable, preventing him from appearing at the August 9, 2004 arraignment, and hence, that he has shown good cause to set aside the Second Judgment. In its Answering Brief to the ICA, Respondent asserted that Petitioner failed to provide the ICA with an adequate record of the proceedings held before the lower court. (Citing HRAP Rule 10(b)(1) (2010) (requiring an appellant who "desires to raise any point on appeal" to "file with the clerk of the court . . . a request to prepare a reporter's transcript of such parts of the proceedings as the appellant deems neces-

sary that are not already on file").)[20] Respondent urged that, in light of these omissions, Petitioner failed to provide a sufficient showing that he was in fact incarcerated at the time of the arraignment. However, Respondent took no position at the hearing on the First Motion and raised only procedural objections to the Second Motion. Respondent therefore did not dispute at any time Petitioner's "good cause" position that he was incarcerated in California on August 9, 2004. Having failed to challenge Petitioner's "good cause," Respondent waived that objection for appeal.

### B.

In addition, on appeal to the ICA, Respondent argued that a satisfactory reason for nonappearance exists where compliance with bail conditions are "rendered impossible by the act of God, the act of the obligee, or the act of law[,]" (citing *State v. Flores*, 88 Hawai'i 126, 131, 962 P.2d 1008, 1013 (App. 1998)), and that the United States Supreme Court has held that a violation of law is "not the act of law" that causes a defendant to miss a court date but rather an "act of [the] defendant[,]" (quoting *Taylor v. Taintor*, 83 U.S. 366, 369–71, 16 Wall. 366, 21 L.Ed. 287 (1872)).

However, there is nothing in the record to indicate that Petitioner was incarcerated in California as the result of a law violation that occurred while he was on bail in the instant case. Respondent did not argue in opposition to Petitioner's First or Second Motion that Petitioner's incarceration resulted from a law violation occurring during Petitioner's release. Nor did the court make any finding to that effect. Thus, Respondent's suggestion is not borne out by the record.

### C.

■ Based on the record, Petitioner did establish good cause for setting aside the Second Judgment. As recounted, Petitioner did not appear at the August 9, 2004, arraignment. The court therefore forfeited Petitioner's $1,000 bail. In addition, criminal contempt charges were instituted against Petitioner for failing to appear and additional bail was set at $150. On December 20, 2005, Petitioner's counsel appeared for arraignment and plea. At that hearing, Petitioner's counsel raised the issue of the bail forfeiture, stating that Petitioner "didn't show up in this case because he was in jail in California at the time." The court directed counsel to "submit some kind of proof of [Petitioner's incarceration] or do a motion" but did not indicate when such a motion should be filed.

Trial was set for October 24, 2006.[21] At trial, the court dismissed the drug charge and criminal contempt charge with prejudice. After the charges against Petitioner were dismissed, Petitioner attempted to retrieve his bail money on October 24, 2006 and discovered that the $1,000 bail had not been reinstated. A day later, on October 25, 2006, Petitioner filed his First Motion.

Attached to Petitioner's First Motion was an affidavit of Petitioner's counsel declaring that he was "informed that [Petitioner] failed to appear [at the August 9, 2004] arraignment because at the time he was incarcerated in California in an unrelated matter." Although the court denied Petitioner's First Motion, the court found that "[a]t the time of his August 9, 2004 arraignment, [Petitioner] was in custody in California on an unrelated criminal matter[.]" Finding 6.[22] The court

---

**20.** Respondent stated that Petitioner had failed to order the November 15, 2006 transcript of the hearing at which the court continued the hearing on Petitioner's First Motion to obtain clarification on fiscal procedures regarding bail forfeitures, the November 21, 2006 hearing on Petitioner's First Motion, the December 21, 2009 hearing, in which the court permitted Respondent to file an opposition to Petitioner's Second Motion, and the January 4, 2010 hearing on Petitioner's Second Motion, in which the court denied Petitioner's Second Motion.

**21.** Prior to trial, on April 27, 2006, Petitioner filed a Motion to Dismiss Complaint. The hearing on this motion was also ultimately continued to October 24, 2006. The minutes do not reflect any objections by Respondent to these continuances.

**22.** Although the ICA correctly determined that it did not have jurisdiction over Petitioner's *appeal* from the First Order, this court may consider the findings and conclusions that evidently support the court's conclusion in the Second Order inasmuch as the findings and conclusions are in the record on appeal. *See State v. Young*, 93 Hawai'i

found that Respondent "took no position" on the motion. Finding 24.

Additionally, in the affidavit of Petitioner's counsel attached to Petitioner's Second Motion, Petitioner's counsel again declared that, "[a]t the time of [Petitioner's] August 9, 2004 arraignment, [Petitioner] was in custody in California on an unrelated criminal matter[,]" referring to the aforesaid finding 6. Hence, the uncontroverted evidence in this case is that Petitioner was incarcerated in California at the time of the August 9, 2004 arraignment (finding 6).

## VIII.

### A.

■ Because Petitioner was incarcerated, he could not be present at the arraignment. Under the circumstances, this constituted "good cause" for his failure to appear. *See Camara*, 81 Hawai'i at 330, 916 P.2d at 1231 ("[G]ood cause ... encompasses a showing of a satisfactory reason for a defendant's failure to appear when required" because the primary purpose of bond is "to ensure the defendant's presence[.]") As stated, the court made a finding consistent with this premise. There is no indication in the record that Petitioner "[broke] his ... recognizance intentionally, with the design of evading justice, or without a sufficient cause or reasonable excuse[.]" *Id.* In light of the foregoing, the ICA erred in concluding that the "court did not abuse its discretion in holding that [Petitioner] did not show 'good cause' for setting aside the bail forfeiture judgment." *Diaz II*, 2012 WL 1525032, at *4.[23]

### B.

■ Finally, Petitioner maintains that the ICA erred in determining that the court did not abuse its discretion in holding that Petitioner violated the general conditions for release on bail under HRS § 804–7.4. In its First Order, the court concluded that "[o]n August 9, 2004, Defendant violated a general condition of bail [under HRS § 804–7.4] by not appearing for his scheduled court" arraignment because there was "no showing that the court at any time gave Defendant permission to leave the jurisdiction of the court[ ]." In its Answering Brief, Respondent pointed out that "it was [Petitioner's] burden to provide the [ICA] with sufficient information in order to overcome the assumption that the court's actions were correct." However, Respondent did not raise this issue before the court and consequently waived it for appeal. *See Moses*, 102 Hawai'i at 456, 77 P.3d at 947.

With respect to HRS § 804–7.4(3), Petitioner cites the order of the circuit court allowing him to travel to California, and argues that he "clearly had permission to leave Hawai'i from a court of competent jurisdiction, which complied with the general conditions of release." Petitioner did obtain "approval" "to leave the jurisdiction of the court," HRS § 804–7.4(3), but from the circuit court. The language of HRS § 804–7.4(3) is somewhat ambiguous insofar as it requires approval "from a court of competent jurisdiction." Logic would dictate that a person on release should obtain permission from the court in which he posted bail.

However, in light of the purposes of bail set forth in *Camara* and the circumstances of this case good cause was established for set-

---

224, 238, 999 P.2d 230, 244 (2000) ("review[ing] [ ] the entire record on appeal" to determine whether "the trial court's findings ... were clearly erroneous"). Moreover, several of the court's findings were incorporated by reference into the affidavit of Petitioner's counsel, attached to Petitioner's Second Motion. To reiterate, the Second Order and Second Judgment were signed by the same judge who filed the First Order and signed the findings and conclusions of the First Order.

**23.** Prior to ruling on the First Motion, the court continued the hearing on Petitioner's First Mo-

tion "to obtain clarification regarding the policies and procedures of the fiscal division of the State Judiciary regarding bail forfeitures." (Conclusion 22 of the First Order). In finding 7, the court stated the $1,000 bail money had already been "transferred to the State of Hawaii general fund account." Finding 7. Of course the foregoing matter should have no bearing on the issue of whether a bail forfeiture judgment should be set aside. The purpose of bail is not "to increase the revenue of the State[.]" *Camara*, 81 Hawai'i at 331, 916 P.2d at 1232.

ting aside the forfeiture judgment. The court found Petitioner was incarcerated on August 9, 2004. The court found that Petitioner was not in contempt of court for failing to appear at the August 9, 2004 arraignment. Although not present at the scheduled arraignment on August 9, 2004, Petitioner was present for trial. Ultimately, bail served its primary purposes of "honor[ing] the presumption of innocence," and "ensur[ing Petitioner's] presence in the pending proceeding." *Id.*

The court's refusal to set aside the forfeiture judgment for failing to appear at the arraignment, then, operated as a sanction against Petitioner. However, this court has said that "the purpose of bail in a criminal case is not to punish the defendant[.]" *Camara*, 81 Hawai'i at 331, 916 P.2d at 1232.

Under the circumstances, respectfully, the court abused its discretion in denying Petitioner's Second Motion.

## IX.

For the foregoing reasons, the ICA's May 30, 2012 judgment, and the court's January 15, 2010 order denying in part and granting in part Petitioner's Second Motion, are vacated. This case is remanded to the court for disposition consistent with this opinion.

